1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> JAVIER GONZALEZ and LOURDES VARGAS LOPEZ individually, d/b/a El 8 Latino, <br><br> Defendants. | 1:12-cv-736 LJO GSA <br><br> **FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BY THE COURT** <br><br> (Document 15) |

On October 9, 2012, Plaintiff J & J Sports Productions, Inc. ("Plaintiff") filed the instant Motion for Default Judgment against Defendants, Javier Gonzalez and Lourdes Vargas Lopez, individually, and d/b/a El 8 Latino ("Defendants"). (Doc. 15).  Defendants have not appeared in the action, nor have they filed any oppositions.  The matter was taken under submission and the hearing on Plaintiff's motion set for November 16, 2012, was vacated.  Upon a review of the pleadings, Plaintiff's motion is GRANTED IN PART.

## BACKGROUND

Plaintiff filed the instant action on May 4, 2012.  (Doc. 1).  Defendants were served with the summons and complaint on August 3, 2012. (Docs. 7 & 8).  The complaint alleges violations of 47 USC sections 605 and 553.  Plaintiff also alleges a state law claim of conversion, as well as a violation of California Business and Professions Code section 17200, *et seq*. (Doc. 1).

1

1    Defendants have not answered the complaint or otherwise appeared in this action.  (Doc.

2    15-2, pg. 1).  On September 19, 2012, the Clerk of the Court entered default against Defendants.

3    (Doc. 14).

4    Plaintiff filed the instant Motion for Default Judgment on October 9, 2012. (Doc. 15).

5    Plaintiff requests that the Court enter default judgment against Defendants in the amount of

6    $116,200.00 for violations of 47 U.S.C. sections  605(e)(3)(B)(iii) and (c)(ii) and conversion

7    only. (Doc. 15-2).  Despite being served with the motion by United States Mail, Defendants have

8    not responded to the motion. (Doc. 15-2).  Defendants are not infants or incompetent persons,

9    and they are not in the military service or otherwise exempted under the Soldiers' and Sailors'

10   Civil Relief Act of 1940. *Id.*

## Legal Standard

12   Federal Rule of Civil Procedure 55(b)(2) provides that judgment may be entered:

13           By the Court.  In all other cases, the party must apply to the court for a
     default judgment.  A default judgment may be entered against a minor or
14   competent person only if represented by a general guardian, conservator, or other
     like fiduciary who has appeared.  If the party against whom a default judgment is
15   sought has appeared personally or by a representative, that party or its
     representative must be served with written notice of the application at least 3 days
16   before the hearing.  The court may conduct hearings or make referrals--preserving
     any federal statutory right to a jury trial--when, to enter or effectuate judgment, it
17   needs to:
                   (A) conduct an accounting;
18                 (B) determine the amount of damages;
                   (C) establish the truth of any allegation by evidence; or
19                 (D) investigate any other matter.

20   "Upon default, the well-pleaded allegations of the complaint relating to liability are taken

21   as true." *Dundee Cement Co. v. Highway Pipe and Concrete Products*, 722 F.2d 1319, 1323 (7th

22   Cir.  1983); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).

23   Factors which may be considered by courts in exercising discretion as to the entry of a

24   default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of

25   plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake

26   in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default

27   was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil

28   Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir.

2

1  1986).

2  **DISCUSSION**

3  *1.    Federal Claims*

4  Plaintiff seeks judgment pursuant to Title 47 of the United States Code section 605

5  against Defendant for unlawfully intercepting, receiving and exhibiting *"The Event": The Manny*

6  *Pacquiao v. Shane Mosley WBO Welterweight Championship,* televised on May 7, 2011 ("the

7  program") at Defendants' commercial establishment, *El 8 Latino.*[1]   The program included

8  undercard preliminary bouts, televised replay, and color commentary.   Plaintiff requests statutory

9  and enhanced damages in the amount of $110,000.00 pursuant 47 U.S.C. sections

10  605(e)(3)(B)(iii) and (c)(ii).   (Docs. 15-2).

11  The relevant provisions of Title 47 of the United States Code section 605, which address

12  unauthorized publication or use of wire or radio communications, state:

13  (a) . . . no person receiving, assisting in receiving, transmitting, or assisting
in transmitting, any interstate or foreign communication by wire or radio shall
divulge or publish the existence, contents, substance, purport, effect, or meaning
14  thereof, except through authorized channels of transmission or reception, (1) to
any person other than the addressee, his agent, or attorney. . .. No person not being
15  authorized by the sender shall intercept any radio communication and divulge or
publish the existence, contents, substance, purport, effect, or meaning of such
16  intercepted communication to any person. No person not being entitled thereto
shall receive or assist in receiving any interstate or foreign communication by
17  radio and use such communication (or any information therein contained) for his
own benefit or for the benefit of another not entitled thereto. No person having
18  received any intercepted radio communication or having become acquainted with
the contents, substance, purport, effect, or meaning of such communication (or
19  any part thereof) knowing that such communication was intercepted, shall divulge
or publish the existence, contents, substance, purport, effect, or meaning of such
20  communication (or any part thereof) or use such communication (or any
information therein contained) for his own benefit or for the benefit of another not
21  entitled thereto.

22

23  Additionally, the aggrieved party is authorized to obtain statutory damages of "not less than

24  $1,000 or more than $10,000, as the court considers just" for each violation.   47 U.S.C. §

25  605(e)(3)(C)(i)(II).   The court may award enhanced damages up to $100,000 for each violation if

26  it finds the violation was willfully committed for commercial advantage or private financial gain.

27  _____

28  [1] *El 8 Latino* is located at 2380 South Bascom Avenue, Suite 200, Campbell, California 95008.

1    47 U.S.C. § 605 (e)(3)(C)(ii).

2           Plaintiff argues that it is a closed-circuit distributor of sports and entertainment

3    programming that purchased and retained the commercial exhibition licensing rights to the

4    program at issue.  Plaintiff marketed the sub-licensing (commercial exhibition) rights in the

5    program to its commercial customers.  Plaintiff contends that persistent signal piracy of its

6    programming costs the company, its customers, and other paying vendors of the program

7    considerable financial losses.

8           In this case, Plaintiff requests the maximum amount of enhanced damages pursuant to

9    section 605 (e)(3)(C)(ii) because instead of lawfully contracting with Plaintiff to show the

10   program, Defendants engaged in wrongful acts to intercept and/or receive and broadcast

11   encrypted telecast.  Plaintiff requests the maximum allowance for statutory violations, totaling

12   $110,000.00.

13          Here, the summons and complaint was properly served on Defendants.  (Docs. 7 & 8).

14   Thus, it appears that Defendants' defaults were properly entered, and the complaint is sufficiently

15   well-pled.  By their defaults, Defendants have admitted to willfully violating the referenced

16   statutes for purposes of commercial advantage.

17          It is clear that deterrence of future violations is an important objective of the statutes.  The

18   facts before the Court indicate that Defendants' establishment is a pool hall with approximately

19   ten tables and a bar.  Mr. Gilbert Tate, an investigator for Plaintiff, submitted an affidavit

20   indicating that he entered the establishment on May 7, 2011.  (Doc. 15-3).   Although the

21   capacity of the establishment is approximately 200 people, there were approximately ninety

22   patrons in the bar at the time the program aired.  The bar housed three thirty-two inch televisions

23   (one in the back, one to the right and one to the left).  *Id.*  When he entered, Mr. Tate saw Manny

24   Pacquiao and Shane Mosley on the screens being introduced by the announcer.  *Id.*  When Mr.

25   Tate completed a second and third head count, there were approximately ninety-five patrons in

26   the establishment.  Mr. Tate left the bar at 9:00 pm.

27          In cases alleging these statutory violations, the amount of damages should be an amount

28   that is adequate to deter this Defendant and others from committing similar acts in the future.

Therefore, the Court recommends the maximum allowable statutory damages be awarded pursuant to 42 U.S.C. sec. 605(e)(3)(C)(i)(II) in the amount of $10,000.00.

With regard to enhanced statutory damages, the Court is mindful that there were between ninety and ninety-five patrons in this establishment at the time of the program. However, it does not appear that a cover charge was required to enter the bar, or that the program was advertised to attract additional patrons. Given these facts, the Court recommends an additional $10,000 in enhanced damages pursuant to 47 U.S.C. § 605 (e)(3)(C)(ii).

   *2.    Conversion*

Additionally, Plaintiff seeks $6,200.00 in conversion damages, the value of the property at the time of the conversion. (Doc. 26-5 at 8.) Under California law, "[c]onversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are : (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581, 35 Cal.Rptr.3d 684 (2005) (internal quotation marks omitted); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir.1992). "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant." *Gilman v. Dalby*, 176 Cal.App.4th 606, 615 n.1, 98 Cal.Rptr.3d 231 (2009). Exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion. *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995); *see also DIRECTV, Inc. v. Pahnke*, 405 F.Supp.2d 1182, 1189 (E.D. Cal. 2005) (concluding that the "right to distribute programming via satellite" constituted a "right to possession of personal property" for purposes of a conversion claim under California law).

Here, Defendant had approximately ninety-five patrons watching the program in question. Plaintiff was granted the exclusive domestic commercial exhibition licensing rights to the program at issue, and thus had the right to possession of the property at the time of the conversion. Defendants did not legally purchase the program. (Doc. 15-1 at pg. 20). Finally, Plaintiff has indicated that Defendants would have been required to pay $6,200.00 if they had

1   ordered the Program from Plaintiff.  *Id*.  Thus, Plaintiff is entitled to damages for conversion in

2   the amount of $6,200.00.

3                                          **RECOMMENDATIONS**

4          Based on consideration of the declarations, pleadings, and exhibits the Court

5   RECOMMENDS the  following:

6          1.        Plaintiff's application for default judgment be GRANTED IN PART;

7          2.        Judgment be entered in this action against Defendants Javier Gonzalez and

8                    Lourdes Vargas Lopez, individually, and d/b/a El 8 Latino Bonfiglios Inc.;

9          3.        Damages in the total amount of $ 26,200.00 be awarded as follows:

10                   a.        For the violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), the sum of

11                             $ 10,000.00;

12                   b.        For the violation of  47 U.S.C. § 605 (e)(3)(C)(ii), the sum of $10,000.00;

13                             and

14                   c.        For the conversion of Plaintiff's property, the sum of $ 6,200.00.

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1      These findings and recommendations are submitted to the district judge assigned to this

2  action, pursuant to Title 28 of the United States Code section 636(b)(1)(B).  Within **fifteen** (15)

3  days of service of this recommendation, any party may file written objections to these findings

4  and recommendations with the Court and serve a copy on all parties.  This document should be

5  captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district

6  judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of

7  the United States Code section 636(b)(1)(C).  The parties are advised that failure to file

8  objections within the specified time may waive the right to appeal the district judge's order.

9  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

10

11      IT IS SO ORDERED.

12  **Dated:    November 28, 2012**          _____ **/s/ Gary S. Austin** _____
                                            UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28